**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:10-mj-0196-LRL |
| | ) | |
| CAMERON REED, | ) | |
| Defendant. | ) | |
| _____ | ) | **O R D E R** |
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:10-mj-0365-LRL |
| | ) | |
| DAWN KIRKMAN, | ) | |
| Defendant. | ) | |
| _____ | ) | |

These cases come before the court on the defendants' motions to dismiss certain counts of their respective amended criminal complaints. In Case No. 2:10-mj-0196-LRL, Cameron Reed has filed a Motion to Dismiss Counts Five and Six of the Amended Complaint (#15). In Case No. 2:10-mj-0365-LRL, Dawn Kirkman has filed a virtually identical Motion to Dismiss Counts Three and Four of the Amended Complaint (#14). In the original complaints the defendants were charged with, among other crimes not relevant to this discussion, operating a motor vehicle while under the influence of drugs, in violation of 36 C.F.R. § 4.23(a)(1). In each case the government filed an Amended Complaint, charging each defendant with two additional charges of operating a motor vehicle with a prohibited substance

in his or her blood.  In the first of the additional counts the prohibited substance is identified as "an amount of marijuana in his [or her] blood equal to or greater than 2 ng/ml of blood," specifically, "Δ9-TETRAHYDROCANNABINOL."  In the second of the additional counts the prohibited substance is identified as "marijuana metabolite in his [or her] blood equal to or greater than 10 ng/ml of blood," specifically, "THC CARBOXYLIC ACID (marijuana metabolite)."  Both offenses are alleged to be violations of Nevada law, N.R.S. 484C.110(3)(g),[1] as assimilated under the Assimilative Crimes Act ("ACA"), 18 U.S.C. § 13(a), and 36 C.F.R. § 4.2.

The defendants contend that this court is without jurisdiction over the marijuana offenses charged under N.R.S. 484C.110(3) because the Nevada statute is not assimilable under 18 U.S.C. § 13(a).

The ACA provides in relevant part:

> Whoever within or upon any [federally reserved land] is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State . . . in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a).  The ACA "promotes the even-handed application of state law to local conduct that the federal law does not punish and, but for the situs being a federal enclave, would qualify as a local offense." *United States v. Waites*, 198 F.3d 1123, 1127 (9th Cir. 2000).  Congress enacted the ACA "to borrow state law to fill in the gaps of federal criminal law applicable to federal enclaves that occur when Congress has not passed specific criminal statutes with respect to the missing offenses." *Lewis v.*

---

[1]  N.R.S. 484C.110(3) provides, in pertinent part:

It is unlawful for any person to drive or be in actual physical control of a vehicle on a highway ... with an amount of a prohibited substance in his or her blood or urine that is equal to or greater than:

| Prohibited Substance | Urine<br>Nanograms Per mililiter | Blood<br>Nanograms Per mililiter |
| --- | --- | --- |
| * * * | | |
| (g) Marijuana | 10 | 2 |
| (h) Marijuana metabolite | 15 | 5 |

2

*United States*, 523 U.S. 155, 160 (1998). "Thus, the ACA subjects persons on federal lands to federal prosecution in federal court for violations of criminal statutes of the state in which the federal lands are located. In so doing, the ACA establishes uniformity in a state's prohibitory laws where such conduct is not made penal by federal statutes." *United States v. Dotson*, 615 F.3d 1162, 1165 (9th Cir. 2010)(citations and internal quotation marks omitted).

> In our view, the ACA's language and its gap-filling purpose taken together indicate that a court must first ask the question that the ACA's language requires: "Is the defendant's "act or omission ... made punishable by *any* enactment of Congress." 18 U.S.C. § 13(a)(emphasis added). If the answer to this question is "no," that will normally end the matter. The ACA presumably would assimilate the statute. If the answer to the question is "yes," however, the court must ask the further questions whether the federal statutes that apply to the "act or omission" preclude application of the state law in question, say, because its application would interfere with the achievement of a federal policy, because the state law would effectively rewrite an offense definition that Congress carefully considered, or because federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue....

> [I]t seems fairly obvious that the Act will not apply where both state and federal statutes seek to punish approximately the same wrongful behavior -- where, for example, differences among elements of the crimes reflect jurisdictional, or other technical, considerations, or where differences amount only to those of name, definitional language, or punishment....

> The primary question (we repeat) is one of legislative intent: Does applicable federal law indicate an intent to punish conduct such as the defendant's to the exclusion of the particular state statute at issue?

*Lewis v. United States*, 523 U.S. at 164-166 (internal citations omitted).

Here, in Count One of each Amended Complaint the defendants are charged with operating a motor vehicle while under the influence of drugs, a violation of 36 C.F.R. § 4.23(a)(1). Section 4.23(a)(1) prohibits the operation of a motor vehicle while the operator is "under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation." The defendants contend essentially that N.R.S. 484C.110(3) is not assimilable under the ACA because the core conduct or wrongful behavior that is prohibited under N.R.S. 484C.110(3) is also prohibited under 36 C.F.R. § 4.23(a)(1). According to the defendants, the core conduct

3

1   prohibited under both N.R.S. 484C.110(3) and 36 C.F.R. § 4.23(a)(1) is essentially the same, *viz.*, the

2   operation of a motor vehicle while alcohol and/or drugs are in the operator's system, thereby posing a

3   threat to public safety.  Hence, the defendants contend that in the federal regulatory scheme there is no

4   gap that the state statute can fill.

5         The defendants further contend that "statutory construction demonstrates that the [Department

6   of Interior] intended to preclude federal prosecutions of operators who drive with per se limits of drugs

7   in their system."  Motions #15 and #14 at 8.  In support of this contention defendants note that although

8   § 4.23(a)(2) is a per se regulation prohibiting the operation of a motor vehicle while "the alcohol

9   concentration in the operator's blood or breath is 0.08 grams or more of alcohol per 100 milliliters of

10   blood or 0.08 grams or more of alcohol per 210 liters of breath[,]" that subsection does *not* prohibit the

11   operation of a motor vehicle while the operator has some specific amount or more of marijuana or other

12   drug in his blood or urine.  In the defendants' view, the failure to enact a corresponding per se regulation

13   regarding drugs was deliberate, from which, under principles of statutory construction, it follows that

14   "the [Department of the Interior] intentionally excluded penalizing the conduct proscribed by Nevada's

15   per se statute."  *Id.*  The defendants therefore conclude that the absence of such a regulation cannot be

16   a "gap" in federal law that the ACA can fill.

17         The government contends first that there is no federal statute or regulation that penalizes the

18   operation of a motor vehicle in a federal enclave while the driver has a specified drug -- here marijuana

19   -- in his blood at or above a specified level.  Therefore, according to the government, unless, as the

20   defendants contend, § 4.23(a)(1) applies to the conduct prohibited under N.R.S. 484C.110(3), there is

21   clearly a gap in the federal law that can and should be filled under the ACA.  The government contends

22   that § 4.23(a)(1) does not address the conduct prohibited under N.R.S. 484C.110(3).

23         The government argues further that even if § 4.23(a)(1) does apply to operating a motor vehicle

24   with a specified drug at or above a specified level, the Nevada statute is nevertheless assimilable under

25   the ACA because there is no evidence or legislative history that suggests that § 4.23(a)(1) was meant

26   to preclude application of the statute.  Finally the government contends that assimilation of the state

1   statute is appropriate because "it is both consistent with Nevada's public policy seeking to prevent

2   drugged driving and furthers the ACA's goal of uniformity."  Response (#20) at 14.

3          36 C.F.R. § 4.23(a)(1) prohibits one from driving a motor vehicle while impaired due to alcohol

4   or drugs.  § 4.23(a)(2) prohibits a person who has 0.08 grams or more of alcohol per 100 milliliters of

5   blood or 0.08 grams or more of alcohol per 210 liters of breath[,]" from operating or being in actual

6   physical control of a motor vehicle.  A conviction under § 4.23(a)(1) requires the government to prove

7   beyond a reasonable doubt the essential element that the driver was "*under the influence* of alcohol, or

8   a drug, or drug, or any combination thereof, *to a degree that render[ed] the operator incapable of safe*

9   *operation.*"  It does not require the government to prove that the accused had a certain level of alcohol

10  or drugs in his blood or breath.  A conviction under § 4.23(a)(2), on the other hand, does not require

11  proof of impairment.  It does, however, require proof of the essential element that a certain level of

12  alcohol or drugs was in the driver's blood or breath at the time he was driving or otherwise in control

13  of the vehicle.  Plainly, each offense requires proof of a fact the other does not.  Hence, to the extent

14  they address the problem of driving a vehicle and consuming alcohol, §§ 4.23(a)(1) and 4.23(a)(2) are

15  separate and distinct offenses.  *See Blockburger v. United States*, 284 U.S. 299, 304 (1932).

16         Although § 4.23(a)(1) prohibits driving a motor vehicle while *impaired* due to drugs, neither §

17  4.23(a) nor any other section of Title 36 of the C.F.R.s contains a corresponding prohibition against

18  driving while having a certain level of *drugs* in one's blood or urine.  That there is a per se prohibition

19  regarding alcohol but not one regarding drugs certainly reveals a gap in the federal law that can and

20  ought to be filled through the ACA.  The defendants argue that as a matter of statutory construction,

21  however, the absence of such a provision is proof that the Department of the Interior deliberately

22  intended not to impose a per se prohibition of such conduct.  The defendants' exercise in statutory

23  construction is directly undermined by 36 C.F.R. § 4.2, which provides:

24  . . .

25  . . .

26

5

1
       (a) Unless specifically addressed by regulations in this chapter, traffic and the use of vehicles within a park area are governed by State law.

2
State law that is now or may later be in effect is adopted and made a part of the regulations in this part.

3
       (b) Violating a provision of State law is prohibited.

4 Hence, as applied to this case, it is clearly and expressly the intent of the Department of the Interior to

5 apply every Nevada State traffic and vehicular law to activities occurring within the Lake Mead National

6 Recreation Area unless the activity in question is specifically addressed by a federal regulation in

7 Chapter I of Title 36 of the Code of Federal Regulations.  As noted above, there is no federal regulation

8 that specifically prohibits the operation of a motor vehicle in a national recreation area while the driver

9 has a certain level of drugs in his blood or urine.  Accordingly, under the ACA a gap exists in the federal

10 law that can and, in the interest of the uniform application of State law, should be filled by NRS

11 484C.110(3).  Moreover, in § 4.2 of 36 C.F.R., the Department of the Interior has expressly made

12 unlawful under its regulations any driving or vehicular activity occurring within its geographical

13 jurisdiction that is unlawful under State law and not specifically addressed in its regulations.  The

14 conduct alleged in the two new counts of each Amended Complaint is therefore governed by Nevada

15 State law, N.R.S. 484C.110(3), and is prohibited within the boundaries of the Lake Mead National

16 Recreation Area.

17       IT IS THEREFORE ORDERED that in Case No. 2:10-mj-0196-LRL, defendant Reed's Motion

18 to Dismiss Counts Five and Six of the Amended Complaint (#15) is denied.

19       IT IS FURTHER ORDERED that in Case No. 2:10-mj-0365-LRL, defendant In Case No. 2:10-

20 mj-0196-LRL Kirkman's Motion to Dismiss Counts Three and Four of the Amended Complaint (#14)

21 is denied.

22       DATED this 20th day of December, 2010.

23

24 _____

25 **LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**

26

6